## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

LA'KEISHA DAUGHTRY
8405 Chevy Chase Terr, #302
Chevy Chase, MD 20815,

    Plaintiff,

v.

KMG HAULING, INC.
14 Bryant Court
Sterling, VA 20166,

and

HUGO GARCIA,
14 Bryant Court
Sterling, VA 20166,

 Defendants.

Civil No.

**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiff La'Keisha Daughtry ("Ms. Daughtry" or "Plaintiff"), through her attorneys, files this Complaint against KMG Hauling, Inc. and Hugo Garcia (referred to collectively as "Defendants"), and states as follows:

### NATURE OF ACTION

1. Ms. Daughtry was employed by Defendant KMG Hauling, Inc. ("kmG") to pick up waste and recyclables in the District of Columbia.  Ms. Daughtry brings this action (1) in accordance with the District of Columbia Minimum Wage Act (DCMWA), D.C. Code § 32-1012 because of Defendants' unlawful deprivation of Plaintiffs' rights to overtime compensation; (2) under the District of Columbia Human Rights Act, D.C. Code § 2-1402.11, et seq. ("DCHRA") and Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII") because of Defendants' discrimination, harassment, and retaliation against her on the basis of her sex, race, and color; and (3) and under the Equal Pay Act, 29 U.S.C. § 206(d)(1) for sex-based pay discrimination.

1

2.      kmG routinely and consistently required its employees, including Ms. Daughtry, to work in excess of forty (40) hours per week within the District of Columbia without providing overtime compensation required by law.  Ms. Daughtry is one of several individuals of whom uncompensated overtime has been required as part of a pattern and practice maintained by Defendants of its employees working in the District of Columbia.  More specifically, Ms. Daughtry and many of her co-workers who work more than fifty percent (50%) of their working time in the District of Columbia have been consistently required to work more than forty (40) hours per week within the District of Columbia without compensation.

3.      Ms. Daughtry seeks to recover damages incurred as a result of kmG's violations of that District of Columbia Minimum Wage Law, D.C. Code § 32-1001 et seq.  Pursuant to D.C. Code § 32-1012(b). Ms. Daughtry seeks declaratory relief; damages, including unpaid overtime premiums for all overtime work required, suffered, or permitted by Defendants; unpaid wages; statutory penalties; other damages, including treble damages and/or liquidated damages; prejudgment and post-judgment interest; and reasonable attorneys' fees and costs incurred in this action. Ms. Daughtry further seeks injunctive relief that ensures that Defendants comply with the overtime requirements under the laws of the District of Columbia.

4.      In addition, Ms. Daughtry seeks compensatory damages, punitive damages, liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs as remedies for Defendants' violations of her rights in contravention of Title VII, the District of Columbia Human Rights Act, and the Equal Pay Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action between citizens of different states as the amount in controversy exceeds the applicable threshold.  *See* 28 U.S. Code § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States").

6.       This Court also has jurisdiction of Plaintiff's federal law claims pursuant to 28

U.S.C. § 1331, as this case involves questions of federal law.

7.      This Court has supplemental jurisdiction over the related DCMWA and DCHRA claims arising under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's claims arising under the laws of the District of Columbia share all common operative facts with her federal law claims, and the parties are identical. Resolving Plaintiff's federal and District of Columbia law claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8.      Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintain business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  On or around September 10, 2020, the EEOC issued Plaintiff Notice of Right to Sue.

10.     Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## THE PARTIES

11.     Plaintiff La'Keisha Daughtry is a former employee of Defendant kmG, and like multiple co-workers, was required to routinely work over forty (40) hours per week for kmG within the District of Columbia without overtime compensation, and she is a citizen of the State of Maryland, residing at 8405 Chevy Chase Lake Terrace #302, Chevy Chase, MD 20815.

12.     Plaintiff is, at all relevant times to this action, an employee of the District of Columbia pursuant to D.C. Code Ann. § 32-1003(b)(1) (A person shall be employed in the District of Columbia when … [t]he person regularly spends more than 50% of their working time in the District of Columbia).

3

13.     Plaintiff was, at all relevant times to this action, an employee as that term is defined in the DCHRA.  D.C. Code § 2-1401.02(9).

14.     Defendant kmG, upon information and belief, is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business at 14 Bryant Court, Sterling, VA, 20166.

15.     Defendant kmG is a Virginia corporation headquartered in Sterling, Virginia.  At all times relevant to this action, kmG has been Plaintiff's employer within the meaning of the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301(1B), and the DCHRA, D.C. Code § 2-1401.02(10).

16.     Defendant Garcia is a resident of Virginia.  He is the President and Owner of Defendant kmG, and at all times relevant to this action, he has exercised operational control over the business. He had and has the power to hire and fire employees, including but not limited to Ms. Daughtry, and make decisions regarding employee (or independent contractor) classification, as well as how much and the method by which Defendant kmG pays workers.  Defendant Garcia is or was Plaintiff's employer within the meaning of the DCWPCL, D.C. Code § 32-1301(1B); and the DCMWA, D.C. Code § 32-1002(3).

**FACTUAL ALLEGATIONS**

17.     Plaintiff La'Keisha Daughtry was employed by Defendant kmG as a driver from October 31, 2018 through March 27, 2020.

18.     When she was hired, Defendants issued Plaintiff an offer to pay her a flat $850 per week regardless of the number of hours worked.  In addition to the flat $850 per week, Defendants promised to pay Plaintiff an additional "commission" of $300 per week on top of the $850 flat rate base, for a total flat rate of $1150 per week no matter the hours she worked.

19.     At no time did Defendants inform Ms. Daughtry or her colleagues that they were considered employees of the District of Columbia if they worked over fifty percent (50%) of their working time within the District of Columbia.

20.     At no time did Defendants inform Ms. Daughtry or her colleagues that they were

4

employees covered by the DCHRA.

21.     At no time did Defendants post in locations where business or activity was regularly conducted or negotiated notices required by D.C. Code § 2-1402.51 providing pertinent provisions of the DCHRA or information pertinent to filing a complaint thereunder.

22.     At no time did Defendants inform Ms. Daughtry or her colleagues that they were entitled to overtime compensation if they worked over forty (40) hours in a week within the District of Columbia.

23.     Plaintiff was paid a flat $1150 per week for the first few months of her employment despite working more than forty (40) hours per week during that time within the District of Columbia.  This amount was less than the flat amount paid to her male and non-African American co-workers performing similar or the same job duties and functions.

24.     On or around March 2019, however, Defendants cut the "commission" component of Plaintiff's flat compensation and thereafter paid her a flat $850 per week no matter how many hours she worked in excess of forty (40).  Notably, also, on or around March 2019 – around the same time her pay was cut – a male co-worker verbally attacked Plaintiff and threatened her with a weapon.  When Plaintiff reported the incident to her manager, her job was threatened, and her pay was also reduced to around $850 per week at or around the same time.  This reduced amount was significantly less than the flat amount paid to her male and non-African American co-workers performing similar or the same job duties and functions.

25.      Also, around this time in March 2019, Plaintiff received a letter of correction/reprimand issued by Defendant Garcia which letter falsely blamed Plaintiff for committing prohibited conduct on a date and time when Ms. Daughtry wasn't even working.

26.     Later in her employment, when Plaintiff was given a trash route, she was promised a weekly flat rate of $1250, but Defendants reduced that amount and instead paid Plaintiff a flat rate of $1200 per week – an amount that was less than the flat amount of her male and non-African American co-workers performing similar or the same job duties and functions.

27.     Plaintiff was paid the foregoing weekly flat rates during her employment with

Defendants no matter that she routinely, throughout her employment, was required to work in excess of forty (40) hours per week within the District of Columbia.  While her male and non-African American co-workers were also routinely required to work more than forty (40) hours per week in the District of Columbia, the flat rates they were paid were higher than the flat rate paid to Plaintiff for performing the identical or similar work, and this was something Plaintiff expressed displeasure with to Defendants.

28.     From the time Plaintiff was assigned a trash route and during the remainder of her employment, Plaintiff was subjected to regular and routine sexual jokes and comments by a co-worker occupying the position of trash helper.

29.     On or about March 25, 2020 the trash helper sexually harassed Plaintiff verbally, and also physically as he committed unwanted and unwelcome touching of Plaintiff of a sexual nature.

30.     Plaintiff reported the incident but was required to continue working with the perpetrator over her objection.

31.     Because Defendants forced Ms. Daughtry to continue to work with the perpetrator in order for her to stay employed, Plaintiff had no other reasonable choice and was forced to leave Defendants' employment, tendering notice on March 27, 2020 as she could not bear to work with the person who had sexually harassed and assaulted her.

32.      Although when she was offered employment, she was informed that only forty (40%) of her time would be spent in the District of Columbia this was not true in practice as Plaintiff, and her co-workers, were required to spend well over fifty (50%) of their time working in the District of Columbia, and they were routinely required by Defendants to work more than forty (40) hours weekly within the District of Columbia.

33.     During Plaintiff's employment, her job duties consisted of driving a kmG waste truck on a route picking up waste in the District of Columbia.

34.     Ms. Daughtry and her co-workers would begin their workday at the company's Sterling, Virginia headquarters where they would check in, and pick up their company vehicle.

6

35.     After Ms. Daughtry and other drivers had picked up their company vehicles, they would proceed to various assigned trash routes assigned by the company.  Ms. Daughtry and several similarly situated employees would drive a route primarily located in the District of Columbia.

36.     Ms. Daughtry and her co-workers would spend the entire day completing the company-assigned route and, following their last assigned stop, would return to the Sterling facility to return their vehicle.

37.     Ms. Daughtry and her co-workers would work over fifty percent (50%) of their weekly hours in the District of Columbia.

38.     Despite the fact that Ms. Daughtry and her co-workers worked over fifty percent (50%) of their weekly hours/working time in the District of Columbia, neither kmG nor Garcia informed Ms. Daughtry or her co-workers that they were covered by the District of Columbia Minimum Wage Law or complied with the posting requirements contained in D.C. Code § 32-1009.

39.     Ms. Daughtry and her co-workers would routinely work over forty (40) hours per week within the District of Columbia.

40.     Despite working over fifty percent (50%) of their working hours in the District of Columbia and over forty (40) hours per week in the District of Columbia, neither Ms. Daughtry nor her co-workers received overtime compensation mandated by D.C. law nor did Defendants inform Plaintiff or her co-workers or make any postings or issue any notices to Plaintiff and her co-workers to advise them they were covered and had rights in accordance with the employment and wage and hour laws of the District of Columbia.

41.     Defendants were aware at all times of the number of hours worked each week by kmG employees including Ms. Daughtry, and they were aware that Ms. Daughtry and other kmG employees regularly spent over fifty (50%) of their working hours within the District of Columbia and worked in excess of forty (40) hours within the District of Columbia.

42.     Defendants set both the compensation for each kmG employee and the route

worked by each employee, including Ms. Daughtry.

43.     While Ms. Daughtry and her co-workers – who performed the same or similar jobs that required equal skill, efforts, and responsibility, and which were performed under similar working conditions – were all paid flat rates, no matter that they worked in excess of forty (40) hours per week in the District of Columbia, the flat rates paid to Ms. Daughtry's male and non-black co-workers were higher than the flat rates she was paid for the very same type of work.

**COUNT I: Violation of D.C. Minimum Wage Act, D.C. Code § 32-1001 *et seq*.: Failure to Pay Overtime**

44.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-43 above as if fully set forth herein.

45.     This Court has original jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1332.

46.     The matters set forth in this Count arise from Defendants' violation of the overtime compensation provisions of the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq*.

47.     At all relevant times to this action, Ms. Daughtry, was an "employee" and Defendants were her "employers" within the meaning of D.C. Code Section 32-1002.

48.     The DCMWA provides that "[n]o employer shall employ any employee for a workweek that is longer than 40 hours, unless the employee receives compensation for employment in excess of 40 hours at a rate not less than 1 ½ [one and one-half] times the regular rate at which the employee is employed." D.C. Code § 32-1003(c).

49.     Defendants did not pay Plaintiff one and one-half times her regular hourly rate of pay for time worked in excess of forty (40) hours per week within the District of Columbia.

50.     Defendants violated the DCMWA by knowingly failing to compensate Ms. Daughtry at a rate not less than one and one-half times her regular hourly rates for every hour worked in excess of forty (40) hours in any one workweek.

51.     Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

52.     Pursuant to D.C. Code § 32-1012, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages of three times the amount of those unpaid overtime wages, statutory penalties, prejudgment and post-judgment interest, and reasonable attorney's fees and costs.

## COUNT II:  SEX-BASED DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE § 2-1401, *et seq.*

53.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-52 above as if fully set forth herein.

54.     The DCHRA makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or hers compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his or hers employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his or hers status as an employee …"  (D.C. Code § 2-1402.11(a)(1)(A)) "based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, political affiliation, status as a victim or family member of a victim of domestic violence, a sexual offense, or stalking, or credit information of any individual…" (D.C. Code § 2-1402.11(a)).

55.     Defendants discriminated against Plaintiff by treating her differently from her male co-workers, including in work assignments and unequal wages and compensation, because of her sex.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard.

56.     Plaintiffs' sex was the determining factor and/or a motivating factor in Defendants' actions.

57.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

58.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

59.     Pursuant to D.C. Code § 2-1403.16(a), Plaintiff is entitled to file a private cause of action for that unlawful discriminatory activity as she has not filed a complaint with the D.C. Commission on Human Rights.

60.     Pursuant to D.C. Code § 1403.16(a) and D.C. Code § 2-1403.13, Plaintiff is entitled to the payment of compensatory damages and reasonable attorneys' fees.

## COUNT III:  RACE-BASED DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE § 2-1401, *et seq*.

61.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-60 above as if fully set forth herein.

62.     The DCHRA makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or hers compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his or hers employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his or hers status as an employee …"  (D.C. Code § 2-1402.11(a)(1)(A)) "based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, political affiliation, status as a victim or family member of a victim of domestic violence, a sexual offense, or stalking, or credit information of any individual…" (D.C. Code § 2-

1402.11(a)).

63.     Defendants discriminated against Plaintiff by treating her differently from her non African American co-workers, including in work assignments and unequal wages and compensation, because of her race and/or color.  Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard.

64.     Plaintiffs' race and/or color were the determining factor and/or a motivating factor in Defendants' actions.

65.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

66.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race and color.

67.     Pursuant to D.C. Code § 2-1403.16(a), Plaintiff is entitled to file a private cause of action for that unlawful discriminatory activity as she has not filed a complaint with the D.C. Commission on Human Rights.

68.     Pursuant to D.C. Code § 1403.16(a) and D.C. Code § 2-1403.13, Plaintiff is entitled to the payment of compensatory damages and reasonable attorneys' fees.

**COUNT IV:  RETALIATION IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.61**

69.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-68 above as if fully set forth herein.

70.     Section 2-1402.61 of the DCHRA prohibits employers from discriminating against an employee "because [she] has opposed any practice made unlawful by this chapter . . . . ." D.C. Code §2-1402.61(a).

11

71.     Plaintiff made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful, discriminatory employment practices based on sex and/or race.

72.     As a result of Plaintiff's complaints, Defendants, their agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings; threats of termination; reprimands; reduced pay; and retaliatory punishment ultimately forcing Plaintiff to leave the employment involuntarily.

73.     Defendants' adverse actions constituted retaliatory workplace harassment.

74.     Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under the DCHRA.

75.     As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for retaliation at trial.

76.     Pursuant to D.C. Code § 2-1403.16(a), Plaintiff is entitled to file a private cause of action for that unlawful discriminatory activity as she has not filed a complaint with the D.C. Commission on Human Rights.

77.     Pursuant to D.C. Code § 1403.16(a) and D.C. Code § 2-1403.13, Plaintiff is entitled to the payment of compensatory damages and reasonable attorneys' fees.

**COUNT V:  SEX-BASED DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-2(a)**

78.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-77 above as if fully set forth herein.

79.     Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

80.     Defendants discriminated against Plaintiff by treating her differently from her male co-workers, including in work assignments and unequal wages and compensation, because of her sex.

81.     Plaintiffs' sex was the determining factor and/or a motivating factor in Defendants' actions.

82.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

83.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

84.     Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

**COUNT VI:  RACE/COLOR-BASED DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-2(a)**

85.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-84 above as if fully set forth herein.

86.     Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to

limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

87.     Defendants discriminated against Plaintiff by treating her differently from her non African American coworkers, including in work assignments and unequal wages and compensation, because of her race and color.

88.     Plaintiffs' race and/or color was the determining factor and/or a motivating factor in Defendants' actions.

89.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

90.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race and color.

91.     Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

**COUNT VII:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-3(a)**

92.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-91 above as if fully set forth herein.

93.     Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

94.     Plaintiff made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful, discriminatory employment practices based on sex

and/or race.

95.     As a result of Plaintiff's complaints, Defendants, their agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings; threats of termination; reprimands; reduced pay; and retaliatory punishment ultimately forcing Plaintiff to leave the employment involuntarily.

96.     Defendants' adverse actions constituted retaliatory workplace harassment.

97.     Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

98.     As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for retaliation at trial.

99.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

**COUNT VIII: CONSTRUCTIVE DISCHARGE IN VIOLATION OF IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE § 2-1401, *et seq*.**

100.     Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-99 above as if fully set forth herein.

101.     Due to Defendants' discriminatory treatment, culminating with sexual harassment by her co-worker (both verbal and physical) Ms. Daughtry sought redress, and when she did so instead of attempting to address the situation Defendants' forced Ms. Daughtry to continue to work with the co-worker who had sexually harassed her.

102.     Defendants did nothing to address the complaints Ms. Daughtry made about the discrimination she suffered, and in fact they punished her for it and forced her to keep working with the very person who had verbally and physically harassed her.

103.     So, nothing in her work environment improved after the complaints, and in fact it was just the opposite – she was forced to work with the perpetrator in retribution for her

complaints.

104.    Having exhausted all available measures known to her to address her discrimination and faced with the reality that nothing was going to improve or change, as a result of the intolerable work environment Ms. Daughtry was forced to resign on March 27, 2020.

105.    Because of Defendants' unlawful conduct Ms. Daughtry was harmed and suffered damages.

106.    Intentional discrimination existed, Defendants made the working conditions intolerable by forcing Ms. Daughtry to continue to work with her assailant, and aggravating factors justified Ms. Daughtry's conclusion that she had no option but to end her employment.

107.    Defendants should make Ms. Daughtry whole by providing appropriate back-pay with prejudgment and post-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices including but not limited to reinstatement and/or front pay; make Ms. Daughtry whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial; pay Ms. Daughtry punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial; pay attorneys' fees and costs; and grant such other and further relief as the Court deems necessary.

**COUNT IX:  CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-3(a)**

108.    Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-107 above as if fully set forth herein.

109.    Due to Defendants' discriminatory treatment, culminating with sexual harassment by her co-worker (both verbal and physical) Ms. Daughtry sought redress, and when she did so instead of attempting to address the situation Defendants' forced Ms. Daughtry to continue to work

16

with the co-worker who had sexually harassed her.

110.    Defendants did nothing to address the complaints Ms. Daughtry made about the discrimination she suffered, and in fact they punished her for it and forced her to keep working with the very person who had verbally and physically harassed her.

111.    So, nothing in her work environment improved after the complaints, and in fact it was just the opposite – she was forced to work with the perpetrator in retribution for her complaints.

112.    Having exhausted all available measures known to her to address her discrimination and faced with the reality that nothing was going to improve or change, as a result of the intolerable work environment Ms. Daughtry was forced to resign on March 27, 2020.

113.    Because of Defendants' unlawful conduct Ms. Daughtry was harmed and suffered damages.

114.    Intentional discrimination existed, Defendants made the working conditions intolerable by forcing Ms. Daughtry to continue to work with her assailant, and aggravating factors justified Ms. Daughtry's conclusion that she had no option but to end her employment.

115.    Defendants should make Ms. Daughtry whole by providing appropriate back-pay with prejudgment and post-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices including but not limited to reinstatement and/or front pay; make Ms. Daughtry whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial; pay Ms. Daughtry punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial; pay attorneys' fees and costs; and grant such other and further relief as the Court deems necessary.

## COUNT X:  SEX-BASED PAY DISCRIMINATION IN VIOLATION OF EQUAL PAY ACT, 29 U.S.C. § 206(d)(1)

116.    Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-115 above as if fully set forth herein.

117.    Section 206(d)(1) of the Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

118.    Defendants have employed Plaintiff and male employees in jobs as drivers, requiring substantially equal skill, effort, and responsibility.

119.    Plaintiff and male employees performed their jobs under similar working conditions.

120.    Plaintiff was paid a lower wage than the male employees doing substantially equal work.   Employees of the opposite sex from Plaintiff were paid differently for performing equal work — work of substantially equal skill, effort and responsibility, under similar working conditions

121.    The differential in pay between the male and Plaintiff, a female employee, was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

122.    Defendants caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

123.    As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants'

actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment and post-judgment interest, attorneys' fees and costs, and other compensation and or/damages pursuant to 29 U.S.C. §216(b).

### COUNT XI:  RETALIATION RELATED TO SEX-BASED PAY DISCRIMINATION IN VIOLATION OF EQUAL PAY ACT, 29 U.S.C. § 206(d)(1)

124.    Ms. Daughtry re-alleges and incorporates by reference the allegations set forth in paragraphs 1-123 above as if fully set forth herein.

125.    Ms. Daughtry made known to Defendants that she was not happy with and that it was not acceptable for her to be paid less than her male counterparts doing similar work.

126.    Plaintiff made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful practice of paying her less than men doing similar work.

127.    As a result of Plaintiff's complaints not only about the harassment and mistreatment, but also about the disparate pay she received from that of her male counterparts, Defendants, their agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings; threats of termination; reprimands; reduced pay; and retaliatory punishment ultimately forcing Plaintiff to leave the employment involuntarily.

128.    Defendants' adverse actions constituted retaliatory conduct.

129.    Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity.

130.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiff further seeks compensatory and punitive damages and

all other injunctive, declaratory, and monetary relief available for retaliation at trial.

131.    Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests that this Court award judgment to the Plaintiff and enter an Order:

A.    Determining that Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

B.    Award damages pursuant to D.C. Code § 32-1012, for Plaintiff to recover unpaid overtime wages, liquidated damages of three times the amount of those unpaid overtime wages, prejudgment and post-judgment interest, and reasonable attorney's fees and costs.

C.    Determine the damages sustained by Plaintiff as a result of Defendants' willful and intentional violations of the DCMWA, D.C. Code § 32-1003(c) and award such backpay and unpaid overtime wages against Defendants in favor of Plaintiff, plus an amount of liquidated damages in the amount of three times the unpaid overtime compensation pursuant to D.C. Code § 32-1012(b); award Plaintiff her costs and reasonable attorneys' fees incurred in this action, as provided by D.C. Code § 32-1012(c).

D.    Determine that Defendants' violations of Title VII were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex, race, and color.

E.    Award Plaintiff compensatory and punitive damages for Defendants' violations of Title VII.

F.      Award Plaintiff appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices including but not limited to reinstatement and/or front pay; make Plaintiff whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial; pay Plaintiff punitive damages for engaging in intentional discrimination with malice or with reckless indifference.

G.      Award Plaintiff her reasonable attorneys' fees and costs of suit for Defendants' violations of Title VII.

H.      Under D.C. Code § 2-1401, *et seq*., award Plaintiff compensatory damages and all other injunctive, declaratory, and monetary relief available for Defendants' unlawful discriminatory practices in violation of the DCHRA including reasonable attorneys' fees and costs pursuant to D.C. Code §§ 2-1403.16 and 2-1403.13.

I.      Award Plaintiff compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other damages and/or compensation pursuant to 29 U.S.C. §216(b) for Defendants' violations of the Equal Pay Act.

J.      Award Plaintiff pre-judgment and post-judgment interest on all amounts owed.

K.   Enjoin Defendants to comply with all applicable laws, including to post a conspicuous notice explaining and summarizing the DCWMA at their principal place of business.

L.   Grant such other further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 19, 2020                    Respectfully Submitted,

LA'KEISHA DAUGHTRY

By _/s/_____
Ellis L. Bennett (DC Bar No. 479059)
Ben Barlow (DC Bar No. 497795)
DUNLAP BENNETT & LUDWIG PLLC
1200 G Street, NW Suite 800
Washington, DC 20005
(202) 316-8558 (telephone)
(855) 226-8791 (facsimile)
ebennett@dbllawyers.com
bbarlow@dbllawyers.com