UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LA'KEISHA DAUGHTRY, <br><br> *Plaintiff*, <br><br> v. <br><br> KMG HAULING, INC. *et al.*, <br><br> *Defendants*. | Civil Action No. 20-3361 (TJK) |

**MEMORANDUM OPINION**

Plaintiff, an African-American woman, sues her former employer and its owner. The gist of her complaint is that Defendants discriminated and retaliated against her under several federal and District of Columbia statutes. Defendants move to dismiss most of her claims for failure to state a claim and for lack of personal jurisdiction over the employer's owner. For the reasons below, the Court will grant the motion in part and deny it in part.

**I.    The Complaint**

According to the complaint, La'Keisha Daughtry is a former employee of Defendant kmG Hauling, Inc. ("kmG"), a Virginia corporation with its principal place of business and headquarters in Sterling, Virginia. ECF No. 2 ¶¶ 11, 14–15. Hugo Garcia is a Virginia resident and the "President and Owner" of kmG. *Id.* ¶ 16. Daughtry worked there as a driver from October 2018 to March 2020. *Id.* ¶ 17. When kmG hired her, Defendants agreed to pay her a flat $850 per week no matter how many hours she worked, and another "commission" of $300 per week, for $1150 in total. *Id.* ¶ 18.

Daughtry alleges that Defendants paid her the agreed-upon amount for the first few months of her employment, during which she worked more than forty hours per week in the

District of Columbia. *Id.* ¶ 23. But on or around March 2019, she claims, a male co-worker "verbally attacked" her and "threatened her with a weapon." *Id.* ¶ 24. When Daughtry reported the incident to her manager, "her job was threatened and her pay was reduced to around $850 per week." *Id.* Daughtry also received a "letter of correction/reprimand" from Garcia that blamed her for "committing prohibited conduct" when she says she was not even on the job. *Id.* ¶ 25.

Daughtry alleges she was "given a trash route" at some point and was promised a weekly flat rate of $1,250. *Id.* ¶ 26. But Defendants then reduced that amount and paid her a flat rate of $1,200 per week, less than what comparable non-African American and male drivers were paid. *Id.* After that, Daughtry alleges she faced regular and routine sexual jokes and comments by a co-worker who had a "trash helper" position. *Id.* ¶ 28. In March 2020, the co-worker "verbally sexually harassed" Daughtry and also "committed [an] unwanted and unwelcome touching . . . of a sexual nature [against her]." *Id.* ¶ 29. Daughtry reported the incident but was still required to work with the co-worker "over her objection." *Id.* ¶ 30. So, she says, she had no other reasonable choice but to leave kmG, which she did in March 2020. *Id.* ¶ 31.

## II.   Procedural History

Daughtry filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 3, 2020. ECF No. 8-2. The EEOC issued her a Notice of Right to Sue on September 10, 2020. ECF No. 2 ¶ 9. Daughtry sued on November 20, 2020. The complaint alleges eleven counts: Violation of the D.C. Minimum Wage Act (Count I); Sex-Based Discrimination in Violation of the District of Columbia Human Rights Act (DCHRA) (Count II); Race-Based Discrimination in Violation of the DCHRA (Count III); Retaliation in Violation of the DCHRA (Count IV); Sex-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (Count V); Race/Color-Based Discrimination in Violation of Title VII (Count VI); Retaliation in Violation of Title VII (Count VII); Constructive Discharge in Violation of the

DCHRA and Title VII (Counts VIII and IX); Sex-based Pay Discrimination in Violation of the Equal Pay Act (Count X); and Retaliation Related to Sex-based Pay Discrimination in Violation of the Equal Pay Act (Count XI). ECF No. 2.  In December 2020, Defendants moved to partially dismiss the complaint for failure to state a claim and for lack of personal jurisdiction over Garcia.  ECF No. 8-1.

### III. Legal Standards

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  The plaintiff bears "the burden of establishing a factual basis for the exercise of personal jurisdiction."  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  Without jurisdictional discovery or an evidentiary hearing on jurisdiction, a plaintiff can carry her burden by making a prima facie showing of personal jurisdiction.  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted).  In "establish[ing] a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility . . . Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."  *Id.*  "When deciding personal jurisdiction without an evidentiary hearing . . . the court must resolve factual disputes in favor of the plaintiff."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quotations omitted).  But the Court need not accept inferences unsupported by the facts.  *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court must construe the

3

complaint in the light most favorable to the plaintiff, but the plaintiff "must furnish 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Tyler v. D.C. Hous. Auth.*, 113 F. Supp. 3d 88, 90 (D.D.C. 2015) (quoting *Twombly*, 550 U.S. at 555). A court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In employment discrimination cases, the Court may consider EEOC charges. *Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 77 (D.D.C. 2021).

## IV.   Analysis

### A.   Daughtry Has Not Shown Personal Jurisdiction Over Garcia

Defendants move to dismiss the complaint against Garcia because the Court does not have personal jurisdiction over him. There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). Daughtry argues that the Court has specific jurisdiction over Garcia. To establish specific jurisdiction, Daughtry "must show that jurisdiction is proper under both (1) the District of Columbia's long-arm statute and (2) the U.S. Constitution's Due Process Clause." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018). Daughtry has the burden to "identify which prong of the long-arm statute she is relying on as the basis for jurisdiction," *id.*, and she identifies D.C. Code Ann. § 13-423(a)(1), which provides for personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia."

"The (a)(1) prong of the District of Columbia's long-arm statute 'extends as far as the Fifth Amendment's Due Process Clause permits.'" *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d

4

361, 371 (D.D.C. 2015) (quoting *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000)).  To satisfy due process, there must be sufficient "'minimum contacts' between the defendant and the forum 'such that he should reasonably anticipate being haled into court there.'" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (citations omitted).  "That is, there must exist 'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit-related conduct * * * create[s] a substantial connection with the forum.'" *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020).  To create such a connection "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Not every act will suffice for purposeful availment purposes because whether due process is satisfied turns on the "quality and nature" of the defendant's contact with the forum.  *Thompson*, 734 F.3d at 1194.

      The complaint alleges that Garcia is the "President and Owner" of kmG and that he "exercised operational control over the business."  ECF No. 2 ¶ 16.  The complaint also alleges that Daughtry worked for kmG in the District of Columbia, as far as she (1) drove "a kmG waste truck on a route picking up waste in the District of Columbia"; (2) drove a route "primarily located in the District of Columbia"; and (3) worked "over fifty percent (50%) of [her] weekly hours in the District of Columbia."  *Id.* ¶¶ 33, 35, 37.  For these reasons, Daughtry argues, Garcia is subject to personal jurisdiction in this District.

      Daughtry's argument does not quite support specific jurisdiction over Garcia.  To make that determination, the Court must consider Garcia's "suit-related contacts undertaken in his corporate role."  *Urquhart-Bradley*, 964 F.3d at 47; *see also Keeton v. Hustler Mag., Inc.*, 465

U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").[1]  The complaint does not allege that Garcia took any specific action relating to Daughtry or any kmG business in the District.  For example, the complaint does not allege that Garcia himself determined Daughtry's pay or route assignment or that Garcia himself arranged for the company to cover trash routes in the District.  The allegations in the complaint merely suggest that Garcia had the power to do these things, given his authority and role.  But that is not enough to show specific jurisdiction over him.  So while perhaps Garcia *did* have suit-related contacts with the District of Columbia, Daughtry has not carried her burden of showing that he did.  Thus, the Court will dismiss the complaint against Garcia without prejudice, for lack of personal jurisdiction.

### B.   Title VII Claims

#### 1.   Daughtry's Allegations of Racial Discrimination Grounded in Unequal Pay Are Not Time-Barred (Count VI)

Count VI of the complaint alleges that kmG paid Daughtry less than similarly situated individuals because of her race.  ECF No. 2 ¶ 87.  Defendants argue that these unequal pay allegations cannot support her race discrimination claim because she did not timely exhaust them

---

[1] Defendants argue that the District of Columbia recognizes a "fiduciary shield doctrine" which provides that "personal jurisdiction over a corporate officer may not be asserted based on 'contacts with the forum that are exclusively in relation to the defendant's corporate responsibility.'" *Mouzon*, 85 F. Supp. 3d at 371.  While several courts have considered this doctrine in the past, *see, e.g.*, *National Community Reinvestment Coalition v. NovaStar Financial, Inc.*, 613 F. Supp. 2d 1, 5 (D.D.C. 2009), the D.C. Circuit recently held that the "fiduciary shield doctrine plays no role in personal jurisdiction analysis under either the Due Process Clause or the coextensive prong of the District of Columbia's long-arm statute." *Urquhart-Bradley*, 964 F.3d at 45.  The Circuit now instructs that "when evaluating under the Due Process Clause an individual's contacts with the forum state, courts cannot ignore contacts made by the individual just because they were made in his or her capacity as an employee or corporate officer.  Contacts are contacts and must be counted.  Said otherwise, the Due Process Clause does not incorporate the fiduciary shield doctrine." *Id.*  The Circuit also concluded that § 13-423(a)(1) of the D.C. long-arm statute—the same provision  Daughtry relies—likewise has no fiduciary shield limitation. *Id.* at 47.

6

before the EEOC.  Under Title VII, a plaintiff must timely exhaust her administrative remedies before bringing an action in federal court.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).  An aggrieved party has 180 days from the alleged discriminatory incident to begin to exhaust her claims by filing them in a charge with the EEOC.  *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020).  Defendants argue that Daughtry's unequal pay allegations before March 7, 2020, are time-barred because she filed her EEOC charge on September 3, 2020.  ECF No. 8-1 at 10.  Not so.

After the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), Congress passed the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009).  Under the statute, an "unlawful employment practice occurs . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."  42 U.S.C. § 2000e-5(e)(3)(A).  Liability under the provision "may accrue and an aggrieved person may obtain relief . . . including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge."  *Id.* § 2000e-5(e)(3)(B).  "In other words, each paycheck resulting from the original 'discriminatory compensation decision or other practice' triggers a new filing period, in effect reviving a claim that otherwise would have been time-barred because of a failure to exhaust administrative remedies within 180 days of the original discriminatory compensation decision or practice."  *Johnson v. Dist. of Columbia*, 632 F. Supp. 2d 20, 22 (D.D.C. 2009).

Defendants agree that Daughtry's claim "for the period of March 7-27, 2020" is not time-barred, because that period falls within 180 days of her filing of her charge with the EEOC. But Defendants are wrong that any "conduct or alleged unequal pay prior to March 7, 2020 . . . is time-barred" and that Daughtry has "effectively conceded" as much. ECF No. 10 at 10. A "fair reading of the complaint . . . shows that the allegations of discriminatory compensation in [March 2020] are related to plaintiff's earlier claims of discriminatory compensation." *Johnson*, 632 F. Supp. 2d at 22. Thus, Daughtry's allegations regarding race-based pay discrimination throughout her employment at kmG can support her Title VII claim.

### 2. Daughtry Exhausted Her Claims of Sex Discrimination (Count V)

Defendants argue that Daughtry did not exhaust her sex discrimination claims, to the extent that they are grounded in allegations of unequal pay and unequal work assignments, because she did not include them in her EEOC charge. ECF No. 8-1 at 7.

To repeat, under Title VII, a plaintiff must timely exhaust her administrative remedies before bringing an action in federal court. *See Payne*, 619 F.3d at 65. "A plaintiff fails to exhaust administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative complaint." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009). To do so, the plaintiff must provide an agency "'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (citation omitted). This exhaustion requirement is not a "mere technicality," but "serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). For this reason, courts have also described properly exhausted Title VII claims as "limited in scope to claims that are like or reasonably related to the allegations in the

8

[administrative complaint]." *Dequan Lin v. Salazar*, 891 F. Supp. 2d 49, 54 (D.D.C. 2012). Thus, the predominant consideration behind the exhaustion doctrine is whether "the Title VII claims . . . arise from the administrative investigation that can be reasonably expected to follow the charge of discrimination." *Id.*

As for her discriminatory pay claim, Daughtry repeatedly referenced her pay in her EEOC charge. Among other things, she specifically alleged that she was "receiving Regular Driver's pay despite my complaints . . . that I should receive the pay of a CDL Driver," thus providing notice that her claims related to a pay disparity. ECF No. 8-2 at 1. She then stated that she believed that she "was discriminated and retaliated against" based on her race and sex. *Id.* at 2. Although she does not tie them together as clearly as she might have, these allegations provided Defendants sufficient information to be on notice of and to investigate a claim for discrimination in pay based on sex. *See Perry v. Clinton*, 674 F. Supp. 2d 110, 118 (D.D.C. 2009) (finding plaintiff's wage discrimination claim exhausted where she charged she was "the only African-American Website Manager as well as the only person in that position to be paid at GS-12 rather than GS-13"). This is not, for example, a situation in which she made no factual claims at all related to her pay. *See Henderson v. Am. Eagle Protective Servs. Corp.*, No. 19-1765 (EGS), 2020 WL 1493943, at *6 (D.D.C. Mar. 26, 2020) (finding that plaintiff failed to exhaust her sex discrimination claim arising from discriminatory pay because her EEOC charge did not "provide any notice to the EEOC to investigate any differences in pay among [the plaintiff] and her male colleagues").

In contrast, Daughtry did not exhaust a claim for sex discrimination based on her work assignments. She argues her charge "specifically states that after reporting discrimination to her employer, her job was threatened, and a male co-worker was *assigned* to her truck who regularly

sexually harassed her." ECF No. 9 at 12 (emphasis in original). True enough. But the charge merely notes, in the context of a claim that a co-worker sexually harassed her, that the co-worker was assigned to work with her. The charge contains no allegations about Daughtry's own work assignments, or that those assignments were motivated by sex discrimination in some way. Thus, it did not provide Defendants sufficient notice to investigate a claim for sex discrimination based on her work assignments.

### 3. Daughtry Exhausted Her Claims of Color Discrimination (Count VI)

Defendants also argue that, to the extent Count VI asserts color-based discrimination claims, Daughtry failed to exhaust those claims. "Although not defined in the statute, Title VII claims based on color have been interpreted by the courts as relating to the complexion of one's skin." *Howard v. D.C. Pub. Sch.*, 501 F. Supp. 2d 116, 121 n.15 (D.D.C. 2007). "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002); *see also Rodriguez v. WMATA*, No. 19-3710 (JEB), 2021 WL 3722729, at *5 (D.D.C. Aug. 23, 2021) (citing same). But "[c]olor may be a rare claim, because color is usually mixed with or subordinated to claims of race discrimination." *Felix v. Marquez*, No. 78-2314 (JHP), 1980 WL 242, at *1 (D.D.C. Sept. 11, 1980). Color discrimination is therefore not limited to differences in skin color within persons of the same race. *See Gordon v. Off. of the Architect of the Capitol*, 750 F. Supp. 2d 82, 88 n.3 (D.D.C. 2010) (construing racial and color discrimination claims by an African American alleging disparate treatment compared to a Caucasian coworker as "identical claims").

Defendants stress that Daughtry did not check the color discrimination box on her EEOC charge. *See* ECF No. 8-2. But while "the boxes aid a claimant in identifying the nature of her

charge, a claimant is not necessarily limited to the boxes she selected if she provides a basis for her claims in her written explanation." *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 13 (D.D.C. 2008). In the body of her charge, Daughtry wrote that she believed she was "discriminated and retaliated against based on [her] race (black/African-American)." ECF No. 8-2 at 2. Because Daughtry referenced the word "black," and because skin color is so closely connected to the African-American race, a discrimination claim based on her color would naturally arise from the administrative investigation into her claim of racial discrimination. *See Dequan Lin*, 891 F. Supp. 2d at 55 (applying same logic to Chinese national origin claim and race and skin color claim). Thus, she has exhausted this claim. *See Gordon*, 750 F. Supp. 2d at 88 n.3.

### 4. Daughtry Has Alleged Discriminatory and Retaliatory Adverse Employment Actions (Counts V, VI, and VII)

Defendants argue that the complaint fails to allege any adverse employment action that can support Daughtry's discrimination and retaliation claims.[2] To establish a discrimination claim under Title VII, a plaintiff must have "suffered an adverse employment action because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*¸ 550 F.3d 1191, 1196 (D.C. Cir. 2008); 42 U.S.C § 2000e-16(a). To suffer an adverse employment action, an employee must "experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (citations omitted).

---

[2] Defendants also argue that Counts VIII and IX, alleging constructive discharge, must be dismissed because constructive discharge is not a stand-alone action. ECF No. 8-1 at 5–6. Daughtry concedes the point and withdraws them, ECF No. 9 at 8, and so these counts will be dismissed for that reason.

11

Because the Court has concluded that Daughtry's allegations of racial discrimination based on pay disparity are not time-barred, and that she has exhausted her sex discrimination claims along the same lines, she has pled an adverse employment action to support her discrimination claims in Counts V and VI. *See Morris v. United States Dep't of Justice*, 298 F. Supp. 3d 187, 194–95 (D.D.C. 2018) (finding pay disparity actionable under Title VII).[3]

Besides alleging a discriminatory adverse employment action in support of Counts V and VI, the Court finds that the complaint plausibly alleges a retaliatory adverse employment action supporting Count VII. "To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006). To plead the second prong of a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting

---

[3] Daughtry also argues that she pled several other adverse employment actions that support sex or race-based discrimination under Counts V and VII. She argues that kmG's assignment of a male co-worker to her truck was an adverse employment action, as was kmG's failure to transfer her away from him after she filed a complaint against him for sexual harassment. ECF No. 9 at 16. The D.C. Circuit has held that an employee's allegation that he "was denied a transfer away from a racially and ethnically biased supervisor to a non-biased supervisor more likely to advance his career, falls within Title VII's heartland." *Ortiz-Diaz v, United States Dep't of Hous. & Urb. Dev., Office of Inspector Gen.*, 867 F.3d 70, 74 (D.C. Cir. 2017). But on the other hand, "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997). The Court cannot say that these allegations (especially the latter) fail to plausibly plead adverse employment actions; whether they ultimately survive summary judgment is another matter. In any event, Counts V and IV survive dismissal for the other reasons explained above.

*Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Whether an action is materially adverse is "tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint."  *Id.* at 69.

Daughtry argues that kmG's failure to transfer her away from her alleged harasser after she complained about him (and asked to be moved) was a retaliatory adverse employment action because it could have dissuaded a reasonable employee from making a charge of discrimination.  She cites no case in which a court has recognized a retaliatory adverse employment action pled along those lines.  On the other hand, Defendants have cited no case in which a court *granted* a motion to dismiss such a claim along these lines.  At this stage, the Court cannot say that these allegations fail to plausibly plead a retaliatory adverse employment action that would have dissuaded a reasonable employee from making a charge of discrimination.  Whether Daughtry's claim survives summary judgment is a question for another day.

> **C.    Daughtry's D.C. Human Rights Act Claims are Neither Time-Barred Nor Inadequately Pled (Counts II, III, and IV)**

Defendants argue that Daughtry's DCHRA claims fail as a matter of law because the alleged discriminatory conduct is time-barred and the complaint does not plead facts showing an adverse employment action.  ECF No. 8-1 at 13–14.  Neither claim succeeds.

The DCHRA statute of limitations provides that a plaintiff must file a claim "within one year of the unlawful discriminatory act, or the discovery thereof."  D.C. Code § 2-1403.16.  Because Daughtry filed her complaint on November 20, 2020, *see* ECF No. 2, "only acts occurring [on or after November 20, 2019] are fair game."  *Cherichel v. Ergo Sols., LLC*, 85 F. Supp. 3d 245, 247 (D.D.C. 2015).  Daughtry alleges that when she drove a trash route, she was paid less than her male and non-African American co-workers performing similar or the same job duties and functions.  ECF No. 2 ¶ 26.  She alleges that she worked on the trash route until

her resignation in March 2020, which is well within the statute of limitations for her DCHRA claim. Thus, Defendants' argument that the claim is time-barred fails.

The complaint also alleges an adverse employment action under the DCHRA. "The legal standard for discrimination under the DCHRA is substantively the same as under Title VII." *Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 73 (D.D.C. 2002). Because the Court has already concluded that the complaint alleges an adverse employment action under Title VII by alleging pay discrimination, the Court holds that it similarly alleges adverse action under the DCHRA.

### D. Daughtry Has Alleged an Equal Pay Act Claim (Count X)

Finally, Defendants move to dismiss Daughtry's Equal Pay Act discrimination claim because the complaint does not identify a comparator or plead equal work. ECF No. 8-1 at 14–15. To state a violation of the EPA, Daughtry "must allege that (1) she was doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex; (2) the job was performed under similar working conditions; and (3) she was paid at a lower wage than those members of the opposite sex." *Cornish v. Dist. of Columbia*, 67 F. Supp. 3d 345, 360 (D.D.C. 2014). The complaint must "include factual allegations that could support the plausible inference that the work performed by the alleged comparators was substantially similar to that performed by the plaintiff. . . . Such allegations might include that the plaintiff and her alleged comparators worked in the same department, held the same level of seniority, or their job descriptions substantially matched." *Tolton v. Jones Day*, No. 19-945 (RDM), 2020 WL 2542129, at *29 (D.D.C. May 19, 2020).

Defendants argue that Daughtry has identified no comparator who performed equal work but who received greater pay. ECF No. 8-1 at 15. It is true that Daughtry does not identify a specific comparator in her complaint. But, at this stage, identifying a comparator is not required.

*See Savignac v. Jones Day*, 486 F. Supp. 3d 14, 31 (D.D.C. 2020).[4]  To the contrary, it is enough for Daughtry to "identify a discrete and focused group of comparators and thereby provide[] Defendants with clear notice of the substance of [Daughtry's] EPA claim."  *Id.*  Her complaint clears that bar.  While much of the complaint references comparators using formulaic language that tracks the pleading requirements, the complaint alleges Daughtry was paid less than male drivers employed by kmG.  ECF No. 2 ¶ 120.

The complaint also alleges that other male drivers performed substantially equal work under similar working conditions.  These other drivers, like Daughtry, would "begin their workday at the company's Sterling, Virginia headquarters where they would check in, and pick up their company vehicle" before "proceed[ing] to various assigned trash routes assigned by the company."  *Id.* ¶¶ 34–35.  "Daughtry and several similarly situated employees would drive a route primarily located in the District of Columbia" and "following their last assigned stop, would return to the Sterling facility to return their vehicle."  *Id.* ¶¶ 35–36.  Because she has identified a "discrete and focused group of comparators" and alleged that they performed substantially equal work, she has stated a claim under the EPA.  *See Savignac v. Day*, -- F. Supp. 3d --, No. 19-2443 (RDM), 2021 WL 1700193, at *9 (D.D.C. 2021) (explaining EPA plaintiff need "only allege that, as a general matter, [alleged comparators] hold jobs with similar performance requirements").

---

[4] Defendants mainly rely on out-of-circuit caselaw.  *See* ECF No. 8-1 at 14–16.  But in general, courts in this district have "not demanded as much factual detail" to plead an equal pay claim as those outside it.  *Tolton v. Jones Day*, No. 19-945 (RDM), 2020 WL 2542129, at *29 (D.D.C. May 19, 2020).

## V. Conclusion

For all the above reasons, the Court will grant in part and deny in part Defendants' motion to dismiss, ECF No. 8. A separate order will issue.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 8, 2021